**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MICHAEL A. MATHIS,**
*on behalf of himself and on behalf
of all others similarly situated,*

     **Plaintiff,**

**v.**                             **Case No. 8:17-cv-01991-JSM-AEP**

**AMAZON.COM.DEDC, LLC, and
ACCURATE BACKGROUND, LLC,**

     **Defendants.**
_____/

**PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff MICHAEL A. MATHIS, on behalf of himself and all others similarly situated,

pursuant to the Court's directive (Doc. 54), files this First Amended Class Action Complaint

against Defendant AMAZON.COM.DEDC, LLC and ACCURATE BACKGROUND, LLC, and

in support of his claims states as follows:

**NATURE OF THE CASE**

1.    Plaintiff brings this action against Defendants for violations of the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–1681x. The FCRA imposes several important

requirements on employers that use a background checks as part of their hiring processes, which

are designed to protect consumers like Plaintiff.

2.    Defendant AMAZON, a foreign Delaware corporation headquartered in

Washington State and doing business in Ruskin, Florida, is an online commerce and cloud

computing company. It fills its staffing needs with consumers like Plaintiff. As part of their

hiring processes, Amazon and its subsidiaries use consumer reports (commonly known as

background checks) to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the background checks, Amazon is obliged to adhere to certain requirements of the FCRA.

3.      When using criminal background reports for employment purposes, employers must, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like Plaintiff with a copy of their respective background reports as well as a written summary of their rights under the FCRA.

4.      Providing a copy of the criminal background report as well as a statement of consumer rights before making an adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports. The FCRA is designed to permit individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision. Even where reports are accurate, the FCRA still demands that notice be given so applicants have an opportunity to address any derogatory information with employers before a hiring decision is made.

5.      In this case, the report was not accurate and included a conviction for cocaine that did not belong to Plaintiff.  This, in turn, caused Plaintiff the very real and concrete harm of losing a job, or least being denied a job for which he had already been hired to do.  There is nothing abstract about Plaintiff's injury, it is real and cost him dearly in terms of loss of employment and loss of income.   Like any normal person, this caused Plaintiff pain and suffering and hurt his life at home.

6.      Plaintiff *did not* timely receive all information to which he was entitled.  Had he received it, he would have been able to challenge it.  Instead, he showed up for work as required

by Amazon and was turned away due to a conviction in his report that did not even belong to him.  It was not until *after* he was turned away from the job on his first day, and *after* he suffered this very real harm, that he was finally given a pre-adverse notice which he allegedly could challenge prior to Amazon taking its final adverse action via a termination.  But in truth, and as explained further below, the decision to fire/not hire Plaintiff had already been made, as evidenced by the fact that he was not permitted to commence employment.

7.      Amazon has been accused of doing the same thing repeatedly in multiple lawsuits across the country, making its actions here particularly egregious and willful.  Amazon was sued in *Gregory Williams v. Amazon.com Inc. et al.*, No. 2:15-cv-00542, filed in the United States District Court Western District of Washington, for nearly identical FCRA violations under 1681b(b)(3), and again in the *Feldstein v. Amazon.com LLC, et al.,* Case No. 3:15-cv-07322, in the U.S. District Court for the District of New Jersey.  Like the *Williams* lawsuit, and this lawsuit, the main allegations in *Feldstein* were that Amazon violated 1681b(b)(3).  Thus, Amazon has been involved in high-stakes class action litigation over the very claim at issue in this putative class action for *years* but still continues to violate 1681b(b)(3).

8.      As a result, Plaintiff brings nationwide class claims against Amazon under 15 U.S.C. § 1681b because, as a systematic omission in its hiring process, Amazon failed to provide Plaintiff and other consumers with a copy of the criminal background report or a summary of rights under the FCRA before taking an adverse employment action against them based on information in those reports.

9.      Plaintiff also brings an individual claim under 15 U.S.C. § 1681e(b) against Accurate because of inaccuracies contained in his criminal background check report to Amazon.  Specifically, the consumer report that Accurate sold to Amazon contained background

information pertaining to a completely different individual with the same name as Plaintiff and had nothing to do with Plaintiff whatsoever.

## JURISDICTION AND VENUE

10.     This Court has federal question jurisdiction over Plaintiff's FCRA claims pursuant to 28 U.S.C. §§ 1331 and 1441.  The Court has also jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p, as well as under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. §§ 1332(d) and 1453.

11.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.  In fact, the Amazon facility where Plaintiff attempted to work is located within this District, specifically in Ruskin, Florida.

## PARTIES

12.     Plaintiff is a "consumer" as protected and governed by the FCRA.

13.     Defendant Amazon is a Delaware corporation that markets its services throughout the United States, including within this judicial circuit.

14.      Defendant Accurate is a consumer reporting agency ("CRA") as defined and governed by the FCRA.

## FACTUAL ALLEGATIONS

15.     Named Plaintiff Michael Mathis applied for a seasonal position with Amazon in November, 2015, using an online application system known as Salesforce.

16.     Amazon offered Plaintiff a position, which was contingent on a background check. Amazon ordered a background check on Plaintiff from Accurate.

17.     Amazon ordered a background check from Accurate around November 30, 2015, which was completed around December 18, 2015.

18.     Accurate completed Plaintiff's background report and, as part of its regular practice with applicants for Amazon, "adjudicated" his report, meaning Accurate compared the report results against hiring criteria Amazon provided to Accurate.

19.     Discovery will show that based on this comparison, Accurate graded Plaintiff's report as "failed," meaning he was not eligible for employment with Amazon. Accurate then communicated this grade to Amazon through Salesforce, which Amazon representatives then viewed.

20.     Discovery will further show that after viewing the failed grade applied to Plaintiff's report by Accurate, Amazon's representative assigned a grade of "does not meet requirements" and communicated that grade back to Accurate through Salesforce. This communication then triggered the sending by Accurate of a letter intended to comply with Section 1681b(b)(3), commonly known as a "pre-adverse-action" notice. Accurate sends this notice letter on Amazon's behalf and automatically after Amazon parrots back the "does not meet requirements" grade to Accurate.

21.     If the applicant does not dispute the results of his or her Accurate report within a certain number of business days, Accurate sends the applicant that purports to be the final adverse-action letter denying the applicant employment.

22.     The Accurate report created for Amazon about Plaintiff Mathis was inaccurate. Accurate improperly reported to Amazon that Plaintiff had a pending possession of cocaine charge, which was not true. The conviction actually belonged to someone else and nothing to do with Plaintiff.

23.     Due to this misreported criminal history, Amazon notified Plaintiff, through the process described above, that the job offer was rescinded due to the pending criminal charges on the Accurate report.

24.     Amazon did not provide Plaintiff with a copy of the background report prior to these adverse actions. Specifically, Plaintiff was told by Amazon that he had a job with a start date during the second week of December, 2016.

25.     When he showed up for work on his scheduled start date, he was turned away by Amazon representatives who would not permit him to enter the building. These individuals offered nothing in the way of explanation except to tell Plaintiff that he would not be working there. Plaintiff complied, and heard nothing further from Amazon for several weeks.

26.     Before he arrived for work, Plaintiff had not received any communications from Amazon or made on Amazon's behalf relating to his employment. As far as he was aware, all was fine and he could begin working on the scheduled start date.

27.     Plaintiff was in dire-straights financially at the time and this loss of a job he had already been promised, or even being given a later start date, crushed him both emotionally and financially.

28.     On around January 18, 2016, Plaintiff received a copy of his Accurate background check, along with a letter suggesting Amazon would not employ him due to the contents of the background check. This letter constituted Amazon's first communication of any reason Plaintiff would have been denied employment on his scheduled start date.

29.     The background check reflected the inaccurate cocaine possession charge that Accurate reported to Amazon. Plaintiff disputed the inaccuracy with Accurate around January 25, 2016.

30.     On around February 22, 2016, Plaintiff received a second letter from Amazon confirming that it could not employ him because of the cocaine charge.

31.     Had Amazon denied Plaintiff employment for a reason other than the contents of the background check, there would have been no reason to send these letters.

32.     Accurate removed the inaccurate charge and issued a corrected report around February 23, 2016. Of course, by that time, it was two months too late to save Plaintiff's seasonal job at Amazon.

33.     Amazon has created and implemented national, uniform hiring and staffing policies, procedures, and practices under which it operates. Those policies, procedures, and practices cover the use of "background checks" or "consumer reports" to screen potential employees.

34.     Amazon routinely uses consumer reports to screen prospective employees, using consumer reports prepared by Accurate to make hiring decisions. The process—the adjudication of his report and sending of notice letters—is the same process Amazon and Accurate follow for all consumers for whom Accurate grades reports as "fail."

35.     As a matter of practice, Amazon regularly fails to provide copies of consumer reports to job applicants against whom it takes an adverse action based in whole or part on consumer reports, before taking that adverse action.

36.     As a matter of practice, Amazon regularly fails to provide copies of the FTC or CFPB notice of rights to job applicants against whom it takes an adverse action based in whole or part on a consumer report, before taking that adverse action.

37.     That is because the communication of the "does not meet requirements" grade from Amazon to Accurate is the adverse action, as demonstrated by the fact that Plaintiff was

turned away and was told he fired on what was supposed to be his first day of work without being given the chance to challenge the contents of his report, or explain that what was in the report was wrong and the conviction at issue *did not belong to him*. The decision begins the process of sending the FCRA notice letters, although they are late because Amazon has made its decision not to hire those individuals by telling Accurate that they do not meet Amazon's hiring requirements.

38.     At that point, the adverse action decision had obviously already been made and then it was acted upon without Plaintiff being provided with any pre-adverse action much less a copy of his consumer report.  It was not until *after* he was denied employment that Amazon sent him a  pre-adverse letter stating he could challenge the decision *that had already been made*.

39.     But 1681b(b)(3) was designed to prevent the adverse action from being taken by giving applicants, like Plaintiff and the putative class he seeks to represent, the opportunity to challenge issues with their consumer reports before an adverse action decision is made, much less taken.  However, in clear violation of the preemptive nature 1681b(b)(3) was designed for, Amazon's entire hiring system works in just the opposite manner: Amazon takes adverse actions against candidates *first* and then sends them purported pre-adverse and adverse action letters which allegedly allow them to challenge the decision already made by Amazon.   Amazon knows this is not how 1681b(b)(3) and its policy to terminate first and then make the applicant prove he/she should not have been fired later is a clear violation of the FCRA.

40.     The final notice is then sent by Accurate automatically after the passing of a specific number of days, and this takes place without any further involvement by Amazon.

41.    As a matter of course, Amazon uses the same business process for obtaining and using consumer reports, and for the "adjudication" of employment applications as it did with Plaintiff and members of the Class described below.

42.    As a result of these FCRA violations, Amazon is liable to Plaintiff, and to each Class member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

43.    Amazon's conduct and omissions were willful.  Because the FCRA was enacted in 1970, Amazon has had years to become compliant but has failed to do so.

44.    Amazon, a nationwide employer, was aware of obligations under the FCRA as they relate to employment because it hired Accurate not only to perform its background checks but also to (attempt to) provide Accurate's adverse-action notices to job applicants. Amazon therefore knew of the requirements imposed upon it by the FCRA, as demonstrated by the fact that it has already been sued multiple times in class-action styled lawsuits similar to this one for violations of 1681b(b)(3), including in *Williams* and again in *Feldstein*, but still failed to craft a system that would ensure compliance with those requirements.

## LEGAL REQUIREMENTS

45.    Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates –

(i)     a copy of the report; and

(ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

46.     The purpose of § 1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, to notify the prospective employer of these inaccuracies before an adverse action is taken and generally to discuss the contents of the report with the prospective employer.

47.     This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance Amazon) could obtain and use a consumer's personal information consumer report.

48.     In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like him with respect to employer use of a consumer report for an employment adverse action.

49.     Plaintiff and each putative class member has been substantively harmed and injured by Amazon in the violation of their personal privacy and in the deprivation of the congressionally mandated information.

50.     As to CRAs like Accurate, the FCRA commands that when they create reports like the one for Amazon about Plaintiff, that they "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

51.     Here, Accurate did not use reasonable procedures because it included the criminal history of a stranger on a report about Plaintiff, and that mixing of information caused Amazon to refuse to hire Plaintiff.

## DEFENDANTS ACTED WILLFULLY

45.    Amazon knew or should have known about its legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau. Amazon obtained or had available substantial written materials, which apprised it of its duties under the FCRA.

46.    Furthermore, as already stated above, Amazon has been involved in FCRA class action litigation over the very same issue raised in for years before this lawsuit was ever filed. Specifically, Amazon was sued in *Gregory Williams v. Amazon.com Inc et al*, Case Number 2:15-cv-00542, in the United States District Court Western District of Washington, for nearly identical FCRA violations under 1681b(b)(3), and again in the *Feldstein v. Amazon.com LLC, et al.,* Case No. 3:15-cv-07322, in the U.S. District Court for the District of New Jersey.

47.    Like the *Williams* lawsuit, and this lawsuit, the main allegations in *Feldstein* were that Amazon violated 1681b(b)(3).  Thus, Amazon has been involved in high-stakes class action litigation over the very claim at issue in this putative class action for *years* but still continues to violate 1681b(b)(3).   It is illogical for Defendant to argue that it was unaware of its obligations under the FCRA as it has been involved in high-stakes FCRA class litigation for nearly an entire year, litigation that started long before the filing of this lawsuit.

48.    Furthermore, the fact that Amazon hired Accurate also cuts in favor of showing Defendant acted willfully in violating the FCRA.   Accurate is a national consumer reporting agency. Importantly, Accurate made readily available to Defendant the FCRA's requirements, including as to pre-adverse and adverse notice. In fact, the Accurate Background provides information on compliance with the FCRA's pre-adverse notice, including both written

information and makes available "best practice" seminars to all of its customers for FCRA compliance, and even a complete outline of information on how to follow 1681b(b)(3), along with a sample pre-adverse notice, which includes the following suggested language/instructions for employers to include and follow, "You recently authorized [Employer] ("the Company") to obtain consumer reports and/or investigative consumer reports about you from a consumer reporting agency. The Company is considering taking action in whole or in part based on information in such report(s), including the following specific items….If you believe that there is additional information that may help us better evaluate your fitness for this position, please contact us immediately by calling _____. If we do not hear from you within [5 [7]] days, we will make our hiring determination based on the information currently available to us."[1]

49.    Despite having a plethora of information available to it as to how to comply with 1681b(b)(3), and despite defending for several years against other 1681b(b)(3) putative class actions and hiring some of the top law firms in the country to represent it, Amazon still choose to continue to violate Plaintiff's and the putative class members he seeks to represent under 1681b(b)(3).

50.    Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that

---

[1] http://resources.accuratebackground.com/hubfs/AB_API_Compliance_Setup_Guide.pdf

the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Center,* 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07cv469 (E.D. Va. 2009) (Consent Order providing ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the Pre-adverse Action Notices).

51.     To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report.  15 U.S.C. § 1681b(b)(1)(A).

52.     Upon information and belief, Amazon knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

53.     Despite its certification, Amazon knowingly violated 15 U.S.C. § 1681b(b)(3).

54.     Despite knowing of these legal obligations, Amazon acted consciously in breaching its known duties and depriving Plaintiff and other members of the class of their rights under the FCRA.

55.     As a result of these FCRA violations, Amazon is liable to Plaintiff and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. §

1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

56.     Accurate was likewise aware of its obligations under the FCRA, as it is a national CRA and has numerous resources at its disposal to learn-of and implement the FCRA's requirements.

57.     There are substantial court decisions, third-party sources, and government publications regarding the requirements for CRAs under Section 1681e(b), meaning Accurate could have informed itself of those requirements with little effort.

58.     Its conduct in failing to properly match employment history to the subject of a report was willful.

### PLAINTIFF AND THE PUTATIVE CLASS HAVE STANDING

59.     Plaintiff suffered precisely the kind of real and concrete harm 15 U.S.C. § 1681b(b)(3) was designed to avoid.  He was denied employment for false information contained in his consumer report *before* he was given the pre-adverse notice to which he was entitled that would have allowed him to explain that the cocaine conviction in his report did not belong to him.  Thus, Plaintiff lost a job, and money, as a result of Defendant's actions.

60.     Furthermore, Plaintiff suffered a real and concrete injury in the form of an informational injury when he did not timely receive his pre-adverse action notice before his termination.  And while Defendant may argue that he *eventually* received all of the information to which he was entitled, if raised such an argument is illogical.  The FCRA mandates that "information" Plaintiff was owed, in the form of a pre-adverse notice, was to be provided prior to Plaintiff's termination.  The fact that Defendant eventually got around to providing the pre-adverse notice at issue, but not until after Plaintiff lost his job, is meaningless in terms of

satisfying the information Plaintiff was owed under 15 U.S.C. § 1681b(b)(3). Defendant's argument to the contrary is comparable to a defendant in a failure-to-provide a timely COBRA notice case arguing that although it failed to timely provide the COBRA notice to the plaintiff, because it did so weeks or months later alleviates it from liability. Another example of the importance of the timing of information, and the informational injury late information causes, can be seen in FMLA cases. Failure to timely provide FMLA paperwork after a qualifying event, or following a request from an employee when a qualifying event is foreseeable, constitutes a viable cause of action for FMLA interference. *See* 29 C.F.R. §§ 825.300(e), 825.301(e). An employer cannot save itself from liability for failure to provide FMLA paperwork months after it was requested, or months after the employer chose to fire an employee for missing work despite the employee experiencing a qualifying event under the FMLA.

61.    The same logic flows to the timeliness of the pre-adverse employment information Plaintiff and the putative class members were owed, but denied, here. Amazon cannot save itself from liability by providing pre-adverse notices after already taking adverse employment actions, namely because there is nothing "pre" about the notices provided. They should instead be called "post-adverse notices".

## CLASS ACTION ALLEGATIONS

62.    Pursuant Rule 23 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1681b, Plaintiff brings this action for himself and on behalf of a class (the "Class"), defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) who within the five years preceding the filing of this action (a) submitted an employment application or other request for placement to Amazon and received a conditional job offer; (b) were the subject of a consumer report from Accurate; (c) which Amazon graded as "does not meet requirements" and communicated that grade to Accurate; and (d) to whom Amazon did not provide a copy of the consumer report and summary of

rights as required by 15 U.S.C. § 1681b(b)(3) at least five business days before the grade of "does not meet requirements" was first communicated to Accurate.

Specifically excluded from this Class are: (a) all federal court judges who preside over this case, their spouses and persons who work for them; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Amazon releases of all their claims for all of their Class claims; (d) Plaintiff's counsel and persons who work for them or are related to them by marriage or as immediately family; and (e) Amazon's employees, officers, directors, agents, and representatives and their family members.

63.   **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Based on information and belief, the Class is comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable.  The names and addresses of the Class Members are identifiable through documents maintained by the Defendant, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

64.   **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class. The total focus of the litigation will be Amazon's uniform conduct and procedures; whether rejecting an applicant for employment when a background report contains a red or yellow flag is an "adverse action" subject to the FCRA notice requirements; whether Amazon provided the required notices; when it did so; and, whether Amazon acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices.  The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question for members of the Class.

65.   **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, Defendant Amazon uses common practices and automated systems in committing the conduct that Plaintiff alleges damaged him and the Class. Plaintiff seeks only

statutory and punitive damages for her classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class. Amazon uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Class.

66.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests coincide with, and are not antagonistic to, other Class members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's counsel has prosecuted complex FCRA class actions across the country.

67.     **Superiority.** Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Amazon's conduct. It would be virtually impossible for the members of the Class to, individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on the failure of Amazon to give Class members the proper notice. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

68.     Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Amazon's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by

allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

### COUNT I – CLASS CLAIM FOR VIOLATIONS OF 15 U.S.C. § 1681b(b)(3)(A)

69.     Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

70.     Amazon's failure to provide members of the Class with a copy of the consumer report upon which it based its decision to take the adverse action, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A)(i).

71.     Likewise, Amazon's failure to provide members of the Class the mandated FTC/CFPB Summary of FCRA Rights, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A)(ii).

72.     Amazon's creation of a system in which Accurate mails pre- and final adverse action letters after hiring decisions are final made robs consumers of a reasonable opportunity to dispute inaccurate information in their background reports, further violating Section 1681b(b)(3).

73.     Amazon's obtaining and use of Class member consumer reports without compliance with § 1681b(b)(3) violates 15 U.S.C. § 1681b(f).

74.     The conduct, action, and inaction of Amazon were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

75.     Plaintiff and other members of the Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Amazon in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

### COUNT II – INDIVIDUAL CLAIM FOR VIOLATION OF 15 U.S.C. § 1681e(b)

76.     Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

77.     Accurate provided to Amazon a consumer report about Plaintiff that included criminal history that did not belong to him, making his criminal history appear worse than it actually is.

78.     Amazon, believing the Accurate report to be correct, chose not to hire Plaintiff based on the inaccurate information on the Accurate report.

79.     As a result of this conduct by Accurate, Plaintiff suffered actual damages, including without limitation, by example only, and as described herein on behalf of his counsel: loss of employment, damages to reputation, embarrassment, humiliation, physical adverse symptoms, and emotional and mental distress.

80.     Accurate's violation of 15 U.S.C. § 1681e(b) was willful, rendering Accurate liable pursuant to 15 U.S.C. § 1681n. In the alternative, Accurate was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81.     Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs, and attorneys' fees from Accurate in an amount to be determined by the Court or a jury pursuant to 15 U.S.C. §§ 1681n & 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

a.      That an order be entered certifying the proposed Class Rule 1.220(b)(1), and (2) and (3) of the Florida Rules of Civil Procedure and appointing Plaintiff and his Counsel to represent the Class;

b.      That judgment be entered for the proposed Class against Defendant Amazon for statutory damages and punitive damages for violation of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. § 1681n;

c.       That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o, against Amazon;

d.       That judgment be entered against Defendant Accurate for actual damages and punitive damages for violation of 15 U.S.C. § 1681e(b), pursuant to 15 U.S.C. § 1681n;

e.       That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o against Accurate; and,

**f.**       That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief that may be permitted.

<u>**JURY TRIAL DEMAND**</u>

Plaintiff and the putative class demand trial by jury as to all issues so triable.

Dated this 6th day of February, 2018.

Respectfully submitted,

*/s/Brandon J. Hill*
**STEVEN G. WENZEL**
Florida Bar No. 159055
**LUIS A. CABASSA**
Florida Bar No.0053643
**BRANDON J. HILL**
Florida Bar Number: 37061
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: swenzel@wfclaw.com
Email: bhill@wfclaw.com
Email: triciaw@wfclaw.com

-and-

**MARC R. EDELMAN**
Florida Bar Number: 96342
**MORGAN & MORGAN P.A.**
201 N. Franklin Street, Suite 700
Tampa, Florida 3306

20

Main No.: 813-577-4722
Facsimile: 813-257-0572
Email: medelman@forthepeople.com

-and-

Elizabeth W. Hanes, *pro hac vice*
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: elizabeth@clalegal.com

**Counsel for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of February, 2018, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/Brandon J. Hill*
**BRANDON J. HILL**